[Civ. No. 1028.    Second Appellate District.—February 29, 1912.]

LOUISE MAY GOODHART, Appellant, v. THE MISSION PUBLISHING COMPANY, a Corporation, Respondent.

ACTION FOR MONEY OBTAINED BY FRAUD—NEWSPAPER SUBSCRIPTION PRIZE CONTEST—FALSE STATEMENT AS TO CONDITION OF VOTES—GUARANTY—PUBLIC POLICY.—An action against a publishing company engaged in a newspaper subscription prize contest, to recover the sum of $300 paid to the defendant, on the ground that it was obtained by the fraud of its agents in charge of the contest, by falsely stating the condition of the votes upon the first prize, and that such payment would secure subscriptions sufficient to obtain the first prize over all contestants, and that it would be guaranteed, and that if the plaintiff did not obtain it the money would be refunded by the defendant, is tenable, and cannot be resisted on the ground that the contract was in fraud of the rights of other contestants, and against public policy.

ID.—GOOD FAITH OF PLAINTIFF—ABSENCE OF FRAUD UPON OTHER CONTESTANTS—RELIANCE UPON AGREEMENT TO REFUND.—Where it appears that the plaintiff is a young girl who acted in entire good faith, and without any intention to do otherwise than to secure for herself sufficient votes by newspaper subscriptions to obtain the first prize in a manner which would be available to any other contestant, there is an entire absence of fraud upon her part upon the rights of other contestants. Nor could the agreement to refund the money, if the first prize were not obtained, be in fraud of the rights of other contestants, though it is an agreement upon which the plaintiff might well have relied.

Id.—General Verdict for Plaintiff—Special Findings Based on Agreement With Subscription Agent—Improper Judgment on Special Findings.—Where the jury rendered a general verdict for plaintiff for the sum of $300 sued for, and also rendered a special verdict in affirmative response to special interrogatories as to all of the specific terms agreed to between the plaintiff and the agent of the defendant in charge of the subscription prize contest, and that plaintiff delivered the money in reliance upon that agreement, it is held that there is no inconsistency between the general and special verdicts, and that the court erred in granting defendant's motion for judgment on the special verdict.

Id.—Immaterial Conditional Element in Contract With Agent.— The further element which appears to have entered into the agreement with the agent that in the event that plaintiff had not enough votes to secure her the first prize, defendant, "if necessary for that purpose, would deliver enough votes to insure her the first prize," may be rejected from consideration, since, as determined by the special findings, the damage accrued to plaintiff by reason of the false representations as to the condition of the vote at the time she paid the $300 to the defendant.

Id.—Claim of Defendant as to Unauthorized Act of Agent—Conclusiveness—Appeal of Plaintiff.—The averment of defendant that the agents who received from the plaintiff the $300 were not acting within the limits of their authority when they made the representations to the plaintiff, as charged, presents a question which it is held was settled adversely to the defendant by the verdict of the jury, and is not open to review in its favor on appeal of plaintiff from the judgment rendered for defendant on the special findings.

Id.—Claim of Unlawful Contract—Essentials to Denial of Relief—Claim not Sustained.—Before relief can be denied because of the unlawful nature of a contract, whereby some rule of public policy is claimed to have been violated, it must appear clearly that the case comes within that class, and that the agreement of the parties in its essential obligations is tainted from improper motives. It is held that the case, as it is exhibited by this record, is not one of that kind.

APPEAL from a judgment of the Superior Court of Riverside County.   F. E. Densmore, Judge.

The facts are stated in the opinion of the court.

Miguel Estudillo, for Appellant.

H. L. Carnahan, for Respondent.

JAMES, J.—This is an appeal by the plaintiff from a judgment entered in favor of defendant. Upon the trial of the case by a jury, verdict in favor of plaintiff for the sum of $300 was returned, together with findings on special questions of fact submitted by the court. Defendant thereafter moved for judgment in its favor on the special findings, which motion was granted, and the judgment appealed from was then entered.

Plaintiff alleged in her complaint that in October, 1909, the Mission Publishing Company of Riverside, being the publishers of the "Morning Mission" and the "Riverside Enterprise," offered prizes to young women who would secure the largest number of votes through a subscription contest; that the prizes were of different value and seven in number; that the defendant represented that the contest would be conducted in a fair and honest manner; that it was not so conducted; that on or about the thirteenth day of November, 1909, and during the course of the contest, defendant, through its agents, stated to plaintiff that they knew how many votes the other contestants had, and also that they knew that the other contestants had done everything that possibly could be done; that neither of them had any more money to pay to the defendant for more votes, and that the payment of $300 by plaintiff to defendant would give plaintiff 600,000 more votes than the highest contestant. It was further alleged that the agents and employees of defendant were sharp and shrewd men, and that plaintiff was a young girl, eighteen years of age, inexperienced, and that the representations last mentioned were made with intent to deceive and defraud her, and that she was deceived thereby and induced to pay to the defendant the sum of $300; that in truth, at the time said representations were made, the highest contestant did have then, over and above all of the votes which plaintiff was entitled to, including the 600,000 votes to be secured by the payment of $300, more than 200,000 votes, and that three of the other contestants also had more votes than plaintiff had, notwithstanding the payment of $300 and the votes awarded to her therefor. The prayer was for damages in the sum of $500. Defendant, after specifically denying the allegations of plaintiff's complaint, alleged that all of the representations as charged by the complaint were made by the employees of defendant, but that such employees

were not authorized or empowered to make any such represen-
tations; and further, that said employees had guaranteed that
plaintiff would get the first prize; that in the event she did
not so secure it, defendant would repay to her the sum of $300.
It was admitted by the answer that the defendant had received
the sum of $300.   Upon the case being given to the jury, four
special issues of fact were submitted for determination, all of
which were answered in the affirmative by the jury.   The sub-
stance of all of the questions is fairly expressed in the first
thereof, which is as follows: "Did the agent or employee of
defendant make the following representations to plaintiff, to
wit: That if she, the plaintiff, would deliver $300 in cash to
defendant, it would guarantee her that she would be awarded
the Ford automobile; that the defendant, its agents and em-
ployees, knew how many votes the other contestants, to wit,
Leona Jeffreys and Marguerite Peters, had, and also knew
that the other contestants, Leona Jeffreys and Marguerite
Peters, had done everything that could possibly be done, and
that neither of them had any more money to pay defendant;
that the payment of $300 would give 600,000 more votes than
the highest contestant, to wit, than said Leona Jeffreys; that
the defendant would guarantee that the plaintiff would get
the first prize, and if necessary for that purpose would deliver
enough votes to plaintiff to insure her the first prize, and that
in the event that she did not secure the first prize the de-
fendant would repay the plaintiff the sum of $300?"   One
of the questions of fact contained the added interrogatory as
to whether plaintiff had delivered the money to defendant
because of her reliance upon the statements and assurances
of defendant's employees that if she would pay the $300 they
would guarantee that she would get the first prize, and if
necessary for that purpose would deliver enough votes to her
to insure her the first prize, and that in the event she did not
secure the first prize, defendant would repay her the sum of
$300.   The ground upon which defendant based its motion
for judgment on the facts as found on the special questions
submitted was that these facts showed that the agreement be-
tween plaintiff and defendant's agents was a fraud upon other
contestants, and that courts would not enforce the contract
because of considerations of public policy.   It nowhere ap-
peared in the record that by any of the terms of the so-called

popular contest any condition of secrecy was imposed upon any of the contestants, or upon the publishers of the newspapers, as to the number of votes which any contestant might have to her credit at any time.   In the published notice of the prize contest it was recited that count of the votes would be printed on Thursday and Sunday of each week of all votes turned into the office up to and including the preceding evening.   The fraudulent representations complained of which induced plaintiff to part with her $300 were made about a week before the contest closed.   As to whether defendant's agents at any time had information regarding the condition of the vote as to any or all of the contestants, which they were bound not to disclose, can only be surmised, for it does not affirmatively appear in the record.   If public announcement of the count was made as scheduled, then there would have been complete notice to all persons who might care to read it, every three days, of the vote tally as it then stood.   In so far as the representation of the number of votes which the other contestants had at the time plaintiff was induced to pay over her money, is to be considered, that representation, if it had then expressed the truth, would not have worked any fraud as against the other contestants; but it nevertheless was one which plaintiff might well have relied upon to her damage.   Neither would that portion of the alleged agreement, wherein defendant's agents promised that if plaintiff failed to secure the first prize they would refund to her her money, be in fraud of the rights of any of the other contestants, keeping in mind the suggestions which we have just made with reference to the question last discussed.   To our minds, the further element which appears to have entered into that agreement, to wit, that in the event plaintiff had not enough votes to secure her the first prize, defendant, "if necessary for that purpose, would deliver enough votes to plaintiff to insure her the first prize," may be rejected from consideration.   As determined by the special findings, the damage accrued to plaintiff by reason of the false representations made to her as to the condition of the vote at the time she paid to defendant the $300.   If the facts as to the count at that time were as represented, then the additional votes which plaintiff secured by the payment of her money would have won for her the first prize in the contest.   Any of the contestants would have had the privilege, no doubt, of

paying in a like or greater sum of money and purchasing votes
of an equal amount or more than those purchased by the plain-
tiff, and it appears to have been altogether within the rules
of the contest that votes could be so secured by any of the
contestants or their friends, the money so paid being credited
on account of the subscription price of the newspapers. From
all that appears in the record, it would seem that the plaintiff,
a young girl, acted in entire good faith, without any intention
of doing otherwise than to secure for herself votes in a manner
which was alike available to any of the other contestants. The
defendant admitted that it received all of her money, and ad-
mitting the falsity of the representations upon which it was
secured, has sought to withhold the refunding of plaintiff's
property through the claim that the contract as made contra-
venes the public policy of the law. It is but fair to say, how-
ever, that from the record there can be gathered enough to
show that defendant was deceived and misled by its own
agents who had charge of the subscription contest, and that,
except for the acts of such agents, its conduct cannot be said
to bear the imputation of fraudulent dealing. It was alleged
on behalf of defendant that the agents who secured from plain-
tiff the $300 were not acting within the limits of their au-
thority when they made the representations to plaintiff as
charged. That question was settled adversely to defendant by
the verdict of the jury, and is not open to review on this ap-
peal. We think that the special findings of the jury were not
inconsistent with the general verdict returned, and that the
court erred in granting the motion of defendant. Before
relief may be denied because of the unlawful nature of a con-
tract, whereby some rule of public policy is claimed to have
been violated, it must appear clearly that the case comes within
that class, and that the agreement of the parties in its essen-
tial obligations is tainted from improper motives. To our
minds, the case as it is exhibited by this record is not one of
that kind.

The judgment is reversed.

Allen, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the
district court of appeal on March 30, 1912.